AO-106 (Rev. 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Northern District of Oklahoma

APR 24 2023

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of
*7702 East 134th Street South, Bixby, Oklahoma 74008*
*and curtilage premises*

)
)
)
)
)

Case No. 23 MJ-261-JFJ

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **21 U.S.C. §§ 846 and 841(b)(1)(A)(viii)** | **Drug Conspiracy** |

The application is based on these facts:
**See Affidavit of SA Taylor Wilson, DEA, attached hereto**.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Taylor Wilson, DEA
*Printed name and title*

Subscribed and sworn to by phone.

Date: 4/24/23

*Judge's signature*

City and state:  Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of 7702 East 134th Street South, Bixby, Oklahoma 74008 and curtilage premises | Case No. _____ <br><br> FILED UNDER SEAL |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Special Agent Taylor Wilson, being first duly sworn under oath, depose and

state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search **7702 East 134th Street South,**

**Bixby, Oklahoma**, Northern District of Oklahoma, including outbuildings and

vehicles on the curtilage premises as further described in Attachment A, for the

things described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA),

United States Department of Justice. I have been a DEA Special Agent since March

2016. I am currently assigned to the Tulsa Resident Office (TRO), in Tulsa,

Oklahoma, and I am an "investigative or law enforcement officer" of the United

States as defined in 21 U.S.C. § 878(a). I am a federal law enforcement officer as

defined under Rule 41(a)(2)(C) and am authorized to request this search warrant

because I am a government agent who is engaged in enforcing federal criminal laws

and I am within the category of officers authorized by the Attorney General to request such a warrant. I was previously employed with Customs and Border Protection (CBP), Department of Homeland Security. I worked as a CBP Officer for approximately two years. During my law enforcement career, I have received countless hours in specialized training from various federal law enforcement agencies.

3. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a considerable amount of knowledge about drug trafficking organizations and their members through my training and experience.

4. Based on my experience as a Special Agent with the DEA, I know that those involved in international drug trafficking rely heavily on telephones to communicate with one another in order to coordinate the smuggling, transportation, and distribution of illegal drugs, and that they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications.

5. Through my employment as a Special Agent with the DEA, I have gained knowledge in the use of various investigative techniques, including the use of wire and electronic interceptions and other types of electronic surveillance, physical surveillance, undercover investigators, confidential informants, cooperating witnesses, controlled purchases of illegal drugs, consensually-monitored recordings, investigative interviews, trash searches, mail covers, financial investigations, administrative and grand jury subpoenas, and search and arrest warrants.

6. The information contained in this affidavit is known personally by me and/or was learned by me from other officers or agents, witness interviews or by reviewing reports and documents. Since this affidavit is being submitted for the limited purpose of enabling a judicial determination of whether probable cause exists to justify the issuance of a search warrant for the described premises, I have not included each and every fact known to me and others regarding the investigation of this matter. I have set forth only the facts that I believe are necessary to establish probable cause. I base my belief that financial and documentary evidence related to the transportation, sale and/or distribution of illegal controlled substances will be recovered based on the information contained within this affidavit.

7. As a result of my participation in the investigation of matters referred to in this affidavit and based upon reports made to me by other law enforcement agencies and witnesses, I am familiar with the facts and circumstances of this investigation. The property to be searched is described in Attachment "A". Attachment "B" is a list of items for which authority is sought to search and seize. Since this affidavit is

presented to support an application for a search warrant of the premises described on Attachment "A", I have not included each and every fact I know concerning this investigation. However, I have set forth the facts that I believe are essential to establish the necessary foundation and probable cause to support the Application for Search Warrant and Search Warrant for the property and vehicle to be searched described in Attachment "A".

8. Based on my training, experience, and the facts set forth in this affidvit, there is probable cause to believe that evidence of violations of Title 21, United States Code, Section 846 and 841(b)(1)(A)(viii) – Drug Conspiracy will be located at **7702 East 134th Street South, Bixby, Oklahoma**, Northern District of Oklahoma, including outbuildings and vehicles on the curtilage premises as further described in Attachment A.

### Jurisdiction

9. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

10. The requested search is related to the following violations of federal law:

    a) knowingly, intentionally, and willfully conspired, confederated, and agreed, together and with others known and unknown to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1).

11. Venue is proper because the person or property described in this affidavit is located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

### Drug Offenses Background

12. During the course of my training and experience, I have learned how individuals involved in drug distribution schemes maintain records and conspire to deceive law enforcement as well as rival distributors of controlled dangerous substances. I have learned how individuals who are involved in the distribution of controlled dangerous substances maintain records and secret monies derived from the sale of illegal drugs.

13. I also know, based on my training and experience, that drug traffickers frequently conduct counter surveillance maneuvers after departing from meetings with other members of their drug trafficking organizations ("DTO") in order to deter law enforcement detection.

14. Based on my background, training, and experience, as previously detailed in this affidavit, I know:

      a.    Drug traffickers often place assets in names other than their own to avoid detection of these assets by law enforcement. In addition, drug traffickers often use a variety of vehicles, vehicles in the names of others and rental vehicles to prevent detection and identification by law enforcement and to prevent forfeiture of the vehicles;

      b.    Even though these assets are in the names of other people, the drug traffickers continue to use these assets and exercise dominion and control over them;

      c.    Drug traffickers must maintain a large amount of U.S. currency in order to finance their ongoing drug activities;

d.      Drug traffickers maintain books, computer data and programs, records, receipts, notes, ledgers, airline tickets, money orders, cashier's checks, records of wire transfers, records of purchase of vehicles and property and other papers relating to the importation, ordering, sale, transportation, possession, purchase and transfer of controlled substances;

e.      Drug traffickers often keep records that are usually recorded in units of weight and monetary value, associated with pounds and kilograms or other such units of measurement and dollar amounts to assist them in their business, records to keep track of amounts "fronted" to customers and money owed by customers for amounts "fronted" by the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained where drug traffickers have ready access to them, i.e., on their persons, in their vehicles,  in or about their residences and places of business. These documents are often kept in code to secret their meaning from law enforcement;

f.      It is common for drug traffickers to hide contraband, proceeds of drug sales, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions, records and evidence of drug transactions relating to transferring, hiding or spending large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, within or around their residences and businesses for ready access or to conceal them from law enforcement authorities;

g.      When drug traffickers collect proceeds from the sale of drugs, they attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize some, if not all, of the following means; foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations and business frauds;

h.      Drug traffickers commonly maintain names, addresses and telephone numbers in books or papers for their associates in the trafficking organization. These books or papers include such items as address books, telephone messages, etc. Shorthand and/or code names are sometimes used for buyers, co-conspirators, sellers, weights and other details of the drug traffickers;

i.      Drug traffickers hide and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences and the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that courts have recognized that unexplained wealth is derived from crimes motivated by greed, in particular, drug trafficking;

6

j.      The books, records, receipts, notes, ledgers, and other items mentioned above are commonly maintained where the drug traffickers have ready access to them and are maintained for long periods of time after the actual event reflected in the documents;

k.      Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their products. These traffickers usually maintain these photographs in their possession, as in their cellular telephones, iPads, or other portable electronic devices;

l.      Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs. This paraphernalia includes, but is not limited to, scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m.      Drug traffickers frequently package illegal narcotics in vacuum sealed bags. Vacuum sealed bags help mask the smell of illegal narcotics, which assists drug traffickers with deterring law enforcement detection. Additionally, mid-level distributors frequently repackage the illegal narcotics they receive from their source of supply ("SOS") into smaller quantities.

n.      Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement and, in so doing, acquire property, services and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names, and they maintain such documents in evidence of their false identities in their residences (including outbuildings), businesses and automobiles together with evidence of their true identities;

o.      Drug traffickers commonly conduct a significant amount of their business by using cellular telephones and other telephone systems and normally make frequent calls to conduct, direct, supervise and coordinate their activities.

p.      Persons engaged in drug trafficking often photograph themselves and others with controlled substances and money proceeds. Such photographs are often kept in digital form on cell phones. Individuals involved in drug trafficking also trade images of firearms and/or other items used in or derived from their illegal activity on their cell phones;

q.      Those involved in domestic or international drug trafficking rely heavily on telephones to communicate with one another in order to coordinate the smuggling, transportation, and distribution of illegal drugs, and they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications;

r.     Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles; and

s.     Individuals involved in illegal activities like drug trafficking often generate large amounts of cash from their illegal activities. In order to conceal profits from illegal activities, these individuals employ various types of financial transactions to disguise and conceal profits. Individuals involved in criminal activities may utilize the facade of a legal enterprise that can be represented as the source of funds arising out of the criminal activity. Individuals involved in illegal activity often physically conceal their funds in locations such as residences, safe deposit boxes, safes or other locations where assets can be physically concealed. Illegal proceeds or assets may also be hidden by placing the assets in third party names including personal property, real property or financial institutions.

### Probable Cause

15. In approximately January 2020, members of the DEA Tulsa Resident Office (TRO) began investigating a drug trafficking organization (DTO) distributing fentanyl, cocaine, and methamphetamine in Tulsa, Oklahoma, and other parts of the United States. On June 24, 2022, United States District Judge Claire V. Eagan, Northern District of Oklahoma, signed an affidavit and order authorizing investigators to intercept wire and electronic communications over telephone number 918-693-0190. During this investigation, investigators have identified telephone number 918-693-0190 to be used by Christian Ramirez. On this same date, U.S. Cellular complied with the court order and investigators began intercepting wire and electronic communications over telephone number 918-693-0190.

16. On June 25, 2022, at approximately 4:23 p.m., investigators intercepted a series of communications between Ramirez, using telephone number 918-693-0190, and FNU LNU (a/k/a "UM1645," a/k/a "Que Rollo"), using telephone number

918-574-1645. In this 4:23 p.m. communication, Ramirez called UM1645 on 918-574-1645.

17. The telephone calls detailed below are summaries and are not verbatim. The summarizations also contain investigators opinions based on previously intercepted communications with Christian Ramirez, and known vernacular used by the DTO when speaking about certain weights and transactions involving controlled dangerous substances.

18. During this call, Ramirez asked UM1645 if there was 12 and a half plus the whole one. UM1645 said yes. Ramirez said that he had some money and would count it shortly. Ramirez asked if there was any of another kind right now or not. UM1645 said he had one that he broke but it looked smooth on the outside but it was good on the inside. Ramirez said okay. Ramirez said he would check how much he had when he got home because some guys were complaining about the taste on the last one that Ramirez opened up. Ramirez said he would check how much there was but should have a good amount of money right now. UM1645 said alright. Ramirez said he would arrive in about an hour. UM1645 said alright.

19. Based on my training and experience and knowledge of this investigation, investigators believe that Christian Ramirez is speaking to one of his narcotic source suppliers. The content of the conversation is consistent with additional calls where Christian Ramirez has referred to narcotics in numerical increments when speaking about pound quantities, and specifically "whole ones" when referring to a kilogram quantity of a certain narcotic. Additionally, Ramirez is speaking about counting the

available currency before arriving to make the purchase. While doing so, Ramirez

addresses concerns with customers complaining about the potency or "taste" of a

certain narcotic.

20. At approximately 5:21 p.m., Ramirez called UM1645 on telephone number

918-574-1645. During this call, Ramirez told UM1645 that it could be done

tomorrow if he was too busy. Ramirez said that he did not have anyone that needed

any until tomorrow. UM1645 said that he was with his boy. Ramirez said tomorrow

was fine. UM1645 told Ramirez that he had made that one into fours and that it was

not complete. Ramirez said that it was fine and asked if it was all broken. UM1645

said they were big pieces. Ramirez said that he did not care. UM1645 said alright.

Ramirez told UM1645 that he would see him tomorrow. UM1645 said okay.

21. Based on my training and experience and knowledge of this investigation,

investigators believe when UM1645 and Christian Ramirez are speaking regarding

making "one into fours" that this is referring to breaking down larger quantities of

narcotics into smaller pre-packaged quantities for quicker retail distribution in street-

level quantities.

22. On July 6, 2022, investigators intercepted a series of communications between

Ramirez, using telephone number 918-693-0190, and UM1645, using telephone

number 918-574-1645. At approximately 4:33 p.m., investigators intercepted a call

between Ramirez and UM1645. During this call, UM1645 advised Ramirez that the

guy was in the "O." Ramirez said okay. UM1645 said that the guy would be there at

6:00 or 7:00.

23. Based on my training and experience and knowledge of this investigation, investigators believe UM1645 advised Ramirez that the individual delivering him additional quantities of cocaine would arrive in Tulsa at approximately 6:00 or 7:00 p.m.

24. At approximately 5:30 p.m., investigators established physical surveillance on UM1645's residence, located at 1931 East 53rd Street, Tulsa, Oklahoma. Approximately two hours later, investigators observed UM1645 enter into the driver's seat of his gray GMC Sierra bearing Oklahoma tag LCS149 and depart from his residence. The gray GMC Sierra is registered to Ehot Padua at 2458 East 54th Street, Tulsa, Oklahoma. Upon UM1645's departure, investigators observed UM1645 to drive in a circle through his neighborhood, before ultimately departing the neighborhood. Investigators maintained surveillance on UM1645 and observed him to travel to a residence in Broken Arrow, Oklahoma, Supermercados Morelos, located at 5147 South Peoria Avenue, Tulsa, Oklahoma, and Chili's, located at 3302 East 51st Street, Tulsa, Oklahoma.

25. At approximately 8:35 p.m., investigators intercepted a call between Ramirez, using telephone number 918-693-0190, and UM1645, using telephone number 918-574-1645. During this call, UM1645 asked Ramirez if he was on the street, so that he did not have to go all the way over there. Ramirez said yes. Ramirez asked if UM1645 wanted him to get closer. UM1645 told Ramirez to get a little closer. Ramirez asked where they could meet, and if everything was okay. UM1645 said yes. Ramirez told UM1645 that he was going to give him some money, but he left it

11

at home. UM1645 said that it was okay. Ramirez asked UM1645 in what area. UM1645 said he would call back in five minutes. Ramirez asked if UM1645 was near the usual place. UM1645 said yes. Ramirez said he would head that way.

26. Based on my training and experience and knowledge of this investigation, investigators believe UM1645 and Ramirez discussed a meet location in order for UM1645 to supply Ramirez with an unknown quantity of cocaine. Ramirez advised he would travel to the area of the location where he and UM1645 had previously met. UM1645 told Ramirez he would call Ramirez back in approximately five minutes.

27. At approximately 8:59 p.m., Ramirez, on telephone number 918-693-0190, called UM1645 at telephone number 918-574-1645. During this call, Ramirez asked if UM1645 was there or not. UM1645 said he was pulling up. Ramirez said that he only asked because he saw a similar truck to UM1645's truck. Ramirez said he was there. UM1645 said alright.

28. Based on my training and experience and knowledge of this investigation, investigators believe Ramirez called UM1645 to advise him that he had arrived to the location where they have previously met. UM1645 told Ramirez he was pulling up.

29. During this time, investigators observed UM1645 in the area of 51st and Harvard in Tulsa. Investigators ultimately lost physical surveillance of UM1645. Ramirez continued to attempt to call UM1645 at telephone number 918-574-1645 on multiple occasions; however, the telephone would go straight to voicemail.

Following this day, investigators identified UM1645 to discontinue the use of telephone number 918-574-1645 and the gray GMC Sierra and to no longer reside at the residence located at 1931 East 53rd Street.

30. On February 8, 2023, your affiant was contacted by members of the DEA Chicago Field Division (CFD). DEA CFD investigators advised they had identified a residence in Cicero, Illinois as a fentanyl stash house. Subsequently, DEA CFD investigators obtained a search warrant for the residence. During the execution of the search warrant, DEA CFD investigators seized approximately 12 kilograms of suspected fentanyl from the stash house. Also inside the stash house, DEA CFD investigators located what is believed to be a counterfeit California Driver License (DL), Social Security card, and Permanent Resident Card (LPR). All three documents displayed the name "Jesus M. Santiago-Martinez." DEA CFD investigators provided your affiant with a photograph of the California DL, Social Security card, and LPR card and your affiant recognized the photograph on the California DL and LPR card to be UM1645. Additionally, DEA CFD advised your affiant that a Jeep Grand Cherokee bearing Oklahoma tag MHM003 was parked at the stash house in Cicero, Illinois. The Jeep Grand Cherokee is registered to Victor Arellano Reyes at 2458 East 54th Street, Tulsa, Oklahoma. It should be noted, this is the same address where UM1645's gray GMC Sierra was registered to.

31. DEA CFD investigators identified UM1645's telephone number as 918-348-2953. Investigators issued a subpoena to AT&T for subscriber information, billing information, and tolls on 918-348-2953 and identified telephone number 918-348-

13

2953 was activated on July 7, 2022, which is the day after UM1645 discontinued the use of telephone number 918-574-1645. Additionally, investigators identified that UM1645 had discontinued the use of telephone number 918-348-2953 after the search warrant on February 8, 2023, in Cicero, Illinois.

32. On March 23, 2023, DEA TRO Intel Analyst (IA) Aston conducted a search in TRAC (a law enforcement database that tracks wire transfers) of telephone number 918-348-2953. IA Aston identified that on November 3, 2022, Daniel David Chapa wired money to Marco Antonio Moreno-Herrera. During this wire transfer, Chapa provided telephone number 918-348-2953 as his telephone number. IA Aston then conducted a search in TRAC of Chapa and identified that on November 1, 2022, Moreno-Herrera wired money to Chapa and Moreno provided Chapa's date of birth as 03-05-1984 and Chapa's telephone number as 720-953-8660.

33. Subsequently, investigators issued a subpoena to T-Mobile for subscriber information, billing information, and tolls on telephone number 720-953-8660. IA Aston identified telephone number 720-953-8660 was deactivated on February 13, 2023. It should be noted, telephone number 720-953-8660 was deactivated approximately five days after the search warrant in Cicero, Illinois.

34. DEA TRO TFO Andrew Sharp conducted a search of Chapa in a DEA database and learned Chapa was identified in September 2012 in a DEA investigation. During the investigation in September 2012, investigators identified Chapa's date of birth as 03-05-1984. Additionally, your affiant and TFO Sharp compared Chapa's photograph from September 2012 to a photograph of UM1645

taken during this investigation and investigators believe Chapa and UM1645 to be the same individual.

35. Furthermore, on March 23, 2023, IA Aston conducted toll analysis on telephone numbers in contact with telephone number 720-953-8660, which was deactivated on February 13, 2023. Through common caller analysis, IA Aston identified telephone number 720-421-6191 to have 12 common callers with telephone number 720-953-8660. Additionally, investigators issued a subpoena to T-Mobile for subscriber information, billing information, and tolls for telephone number 720-421-6191. Investigators identified telephone 720-421-6191 was activated on February 11, 2023, which is approximately three days after the search warrant in Cicero, Illinois. Telephone number 720-421-6191 is subscribed to David Flores with no listed address.

36. On March 24, 2023, Special Judge Kasey Baldwin, Tulsa County District Court, signed an order authorizing investigators to receive GPS location data on telephone number 720-421-6191. On this same date, members of T-Mobile complied with the court order and investigators began receiving GPS location data on the telephone. Upon activation, investigators observed GPS location data to indicate that the telephone was in the Denver, Colorado, area.

37. On April 4, 2023, investigators observed GPS location data on telephone number 720-421-6191 had departed from Colorado and ultimately travelled to the Tulsa, Oklahoma, area. Investigators observed GPS location data on telephone

number 720-421-6191 to stay overnight at a residence located at **7702 East 134th Street South, Bixby, Oklahoma**, on the night of April 4, 2023.

38. On April 5, 2023, at approximately 11:33 a.m., your affiant observed GPS location data on telephone number 720-421-6191 to indicate the telephone was located at 10671 South 217th East Avenue, Broken Arrow, Oklahoma. Approximately six minutes later, your affiant established physical surveillance at the aforementioned residence in Broken Arrow and observed a 2015 maroon Chevrolet Traverse bearing Oklahoma tag NGT978 to be parked in the driveway. This vehicle is registered to Sylvia Lopez at 4029 South 213th East Avenue, Broken Arrow, Oklahoma. Additionally, your affiant observed a silver Dodge Minivan and a Black Chevrolet Traverse to be parked at the residence.

39. At approximately 12:44 p.m., DEA SA Nicholas Sanders established physical surveillance at the residence located at 10671 South 217th East Avenue and observed the maroon Chevrolet Traverse to be parked in the driveway and for the garage door to be open on the residence. A short time later, SA Sanders observed the maroon Chevrolet Traverse to depart from the neighborhood. Investigators maintained surveillance on the maroon Chevrolet Traverse upon its departure from the neighborhood and observed GPS location data on telephone number 720-421-6191 to travel with the vehicle.

40. At approximately 12:53 p.m., SA Sanders observed the maroon Chevrolet Traverse arrive to Kum and Go, located at 24055 SH-51, Broken Arrow, Oklahoma. Upon arrival, the maroon Chevrolet Traverse parked at the gas pumps. After a few

16

minutes, your affiant observed a Hispanic male wearing a black hat, black hoodie, and dark colored jeans to exit the driver's seat and walk into the business. Your affiant recognized the Hispanic male to be UM1645 (based on prior in person observations of him during this investigation). Additionally, your affiant observed UM1645 to be the sole occupant of the maroon Chevrolet Traverse.

41. On April 19, 2023, an arrest warrant was issued in the Northern District of Oklahoma for UM1645 under the name Daniel David Chapa (a/k/a "Que Rollo," a/k/a "Jesus Santiago Martinez") following an indictment by a federal grand jury for Drug Conspiracy and Use of a Communication Facility in Committing, Causing, and Facilitating the Commission of a Drug Trafficking Felony.

42. On April 20, 2023, at approximately 8:00 a.m., your affiant observed GPS location data on telephone number 720-421-6191 to be in the area of **7702 East 134th Street South, Bixby, Oklahoma**. Approximately 40 minutes later, investigators established physical surveillance at the residence, located at **7702 East 134th Street South, Bixby, Oklahoma.** Upon arrival, your affiant observed a black Jeep Grand Cherokee bearing Oklahoma tag NLU587 to be backed into the driveway area of the residence at **7702 East 134th Street South, Bixby, Oklahoma**. This vehicle is registered to Sylvia Lopez at 4029 South 213th East Avenue, Broken Arrow, Oklahoma. It should be noted, this is the same registered owner and address where the maroon Chevrolet Traverse was registered, which investigators observed UM1645 driving on April 5, 2023. Additionally, your affiant observed a red GMC

17

Sierra bearing Oklahoma tag HKY506 to be parked in the driveway area next to the

black Jeep Grand Cherokee. The red GMC Sierra is registered to Natividad Munoz

Ortiz at 7702 East 134th Street South, Bixby, Oklahoma.

43. At approximately 1:01 p.m., TFO Sharp observed a Hispanic male wearing t-

shirt and jeans exit the residence, located at **7702 East 134th Street South, Bixby,**

**Oklahoma,** via the door on the east side of the residence. TFO Sharp recognized the

aforementioned Hispanic male to be UM1645. UM1645 proceeded to enter into the

driver's seat of the black Jeep Grand Cherokee and depart from the residence.

Investigators maintained physical surveillance on UM1645 and observed him to

travel to the area of 21st and Garnett in Tulsa. Meanwhile, investigators monitored

GPS location data on telephone number 720-421-6191 and observed the telephone to

travel with UM1645 to the area of 21st and Garnett.

44. Since UM1645's arrival to the Tulsa-area on April 4, 2023, investigators have

observed GPS location data on telephone number 720-421-6191 at night to be in the

area of **7702 East 134th Street South, Bixby, Oklahoma**, further corroborating that

the device with telephone number 720-421-6191 as well as UM1645 are being housed

**7702 East 134th Street South, Bixby, Oklahoma**.

45. Through this investigation, investigators have established UM1645's role

within the DTO and have identified UM1645 is responsible for distribution,

trafficking, and handling of money. Investigators believe that UM1645 is still in

communication with DTO sources of supply, distributors, and money launders.

Investigators believe that by searching the property of **7702 East 134th Street South, Bixby, Oklahoma**, including outbuildings and vehicles on the curtilage premises will provide investigators with further documents, cellular devices, and other items which will assist investigators in obtaining evidence regarding UM1645's Title 21 violations within the Northern District of Oklahoma (NDOK). Investigators also believe the aforementioned items will assist in obtaining evidence regarding the Mexican-based Sources of Supply, as well as for DTO members based within the NDOK.

### Conclusion

46. Based on the information above, I submit that there is probable cause to search **7702 East 134th Street South, Bixby, Oklahoma**, Northern District of Oklahoma, including outbuildings and vehicles on the curtilage premises further described in Attachment A, and seize the items described in Attachment B.

47. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Taylor Wilson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to by phone on 24th day of April, 2023.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A

### Property to be Searched

The property to be searched is a residence located at **7702 East 134th Street**

**South, Bixby, Oklahoma and curtilage premises**, Northern District of Oklahoma,

further described as a single-family dwelling. The residence to be search is located in

the 7000 block of East 134th Street South, which is depicted in the picture below. The

residence to be search is located on the southeast corner at the intersection of East

134th Street South and South 77th East Avenue in Bixby. The residence to be search is

constructed of khaki painted metal with white trim. The front entry door of the

residence to be searched is located on the east side of the residence, is light in color,

and is covered by a storm door. There is also a light-colored door located on the west

side of the residence. The numbers '7702' are in white on the north side of the

residence.



## ATTACHMENT B

### Particular Things to be Seized

All items that constitute evidence, instrumentalities, contraband, and/or fruits of violations of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii) – Drug Conspiracy, including:

    a.  Documents showing ownership of real or personal property;

    b.  United States Currency or items reflecting drug proceeds;

    c.  Books, records, receipts, notes and other papers relating to the trafficking of narcotics even though these documents may be in code or in a different language other than English or in electronically stored data;

    d.  Contraband, including controlled substances, proceeds of drug sales, records of drug transactions, drug sources, drug customers, and other tangible items evidencing the obtaining, secreting, transfer and/or concealment of assets and/or money obtained through or used in the transportation, distribution, and sale of narcotics, including but not limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any corresponding records of account receivable, money paid or received, drugs supplied or received, cash received to be paid for controlled substances or intended to be paid for controlled substances, whether in paper form or electronically stored data on cellular telephones;

    e.  Items of personal property tending to establish the existence of a narcotics conspiracy including but not limited to personal telephone bills, photographs and

documents and other items reflecting names, addresses, telephone numbers, and communications;

f.  Paraphernalia for distributing, packaging and weighing narcotics.  Equipment and materials used in the building or using concealed compartments;

g.  Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

h.  Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

i.  Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long-distance calls reflecting domestic and foreign travel;

j.  Any and all appointment calendars;

k.  Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys, safes, any and all documents relating to banking activities and other financial transactions including the purchase of real estate and documents showing ownership of real estate;

l.  Records relating to employment, wages earned and paid and other compensation records. Records relating to local, state and federal personal and

2

business income, sales and service taxes, including but not limited to, computations, notes and records used for tax purposes;

m. Evidence of proceeds including items relating to maintaining, secreting, gathering or liquidating drug proceeds, particularly: financial records of withdrawals, funds of transfers, purchases, sales, transfers of assets or consolidation of assets. Liquid assets or evidence of them including currency, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, precious metals and jewelry, and documents relating to safe deposit boxes, stocks, bonds and other financial instruments;

n. Evidence of the expenditure of money for the purchase of vehicles or evidence establishing an ownership interest in vehicles, including certificates of title, vehicle tag records, photographs and receipts of vehicle transactions;

o. Cellular telephones, and the electronically stored data therein, for which a separate search warrant will be sought; and

p. Items (a) through (o) listed above, which are evidence of Drug Conspiracy and may be contained within vehicles on the curtilage of the property to be searched.